IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JOSHUA MEYERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 17-3011 |
| ) | |
| JACQUELINE LASHBROOK, ) | |
| ) | |
| Respondent. ) | |

OPINION

RICHARD MILLS, United States District Judge:

Joshua Meyers seeks a Writ of Habeas Corpus under 28 U.S.C. § 2254.

The Petition is denied.

## I.   BACKGROUND

The Petitioner is in the custody of the Illinois Department of Corrections, following a judgment entered by the Circuit Court of Sangamon County sentencing him to 60 years imprisonment for first degree murder.

A. <u>Evidentiary Motions and Trial Testimony</u>

At trial, the Petitioner claimed he shot and killed Tyrone Jones in self-defense.  Two issues that arose at trial concerned whether (1) Petitioner could offer testimony that the victim had been a suspect in the shooting death of Chris Pudschun, which occurred only two weeks before Jones was killed; and (2) the

1

prosecution could introduce evidence that Petitioner was involved in manufacturing methamphetamine and was arrested following a stand-off with police.

As for the first issue, the trial court prohibited the Petitioner from introducing evidence that Jones had been considered a suspect, reasoning that the circumstances of Pudschun's death were unknown. However, the court held the Petitioner could testify that Jones had bragged to him about killing Pudschun and, if Petitioner so testified, could corroborate that Pudschun was in fact killed. The Petitioner did not offer such testimony.

The trial court held that evidence concerning the circumstances of the Petitioner's arrest and his involvement in manufacturing methamphetamine was relevant to the Petitioner's consciousness of guilt and his motive for shooting Jones, respectively. At trial, the prosecution presented testimony that police attempted to execute a warrant for the Petitioner's arrest several days after Jones was killed but he refused to cooperate, resulting in a six-hour standoff. The police officers were reluctant to enter and attempted to negotiate a peaceful surrender. Eventually, the Petitioner came outside and was subdued with a beanbag gun.

The record shows that most of the events leading up to Jones's death were undisputed at trial. On the evening of August 3, 2003, Jones and Don Molton set out to steal pills from pharmacies for the Petitioner to use in manufacturing

methamphetamine. Initially, they stole the wrong pills. The Petitioner then drove the two to another pharmacy for a second attempt, before abandoning Jones and Molton there. Jones, accompanied by Molton, went to the Petitioner's house and angrily confronted him there. Jones was outside when the Petitioner came onto the porch and shot him multiple times.

There was conflicting testimony as to what occurred in the moments just before that shooting. Molton testified that Petitioner shot Jones without provocation and continued shooting after Jones turned and ran. Brian Bauman, who lived at the house with the Petitioner, testified Jones had started to approach the Petitioner aggressively and reached down toward his belt or waistline before the Petitioner pulled a pistol from his belt and shot him. The Petitioner, in his statement to police and his trial testimony, claimed that Jones had made a move towards him and put his hand in his pocket. However, Bauman and the Petitioner both acknowledged they did not see Jones with a weapon at the time of the altercation.

The medical examiner testified Jones suffered two gunshot wounds, one to his abdomen and one to his back.

The jury convicted the Petitioner of first degree murder. The Petitioner's 60-year sentence included a 25-year enhancement for discharging a firearm.

B. Direct Appeal

The Petitioner filed a direct appeal. His primary issues on appeal were that (1) the admission of evidence that he was engaged in methamphetamine production violated Illinois law; and (2) the prosecutor erred in closing argument. The Illinois Appellate Court affirmed his conviction and sentence.

The Petitioner filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, reiterating the same claims. The PLA was denied on May 31, 2017.

The Petitioner filed a petition for writ of certiorari that the United States Supreme Court denied on November 5, 2007. *See Meyers v. Illinois*, 552 U.S. 1016 (2007).

C. State Post-Conviction Proceedings

On March 31, 2008, the Petitioner filed a post-conviction petition pursuant to 725 ILCS 5/122-1 in the state trial court. The petition was later amended through counsel. The Petitioner raised the following issues: a) his statement was obtained in violation of his right to counsel, and trial counsel was ineffective for failing to raise this issue; b) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that two detectives involved in Petitioner's case, Jim Graham and Paul Carpenter, were allegedly being investigated for misconduct in unrelated cases; and c) appellate counsel was ineffective for failing to argue that

4

the trial court erred in excluding evidence that Jones was a suspect in the investigation into Pudschun's death. Initially, the Petitioner's pro se petition asserted that his sentence enhancement violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, the amended petition withdrew that argument and asserted only the enhancement violated state law.

The trial court dismissed the petition in March of 2014.

The Petitioner appealed and appointed counsel filed a brief arguing that post-conviction counsel had provided unreasonable assistance by adopting the Petitioner's *Brady* claim without submitting additional support for it. The counseled brief asked only that the case be remanded "for compliance with Illinois Supreme Court Rule 651(c)," which sets out the duties of appointed post-conviction counsel.

After counsel's brief was filed, the Petitioner moved to file a supplemental pro se brief that incorporated the remaining issues raised in his post-conviction petition. The appellate court denied his request and affirmed the judgment of dismissal in March OF 2016.

The Petitioner filed a pro se PLA, arguing that post-conviction counsel performed unreasonably by failing to adequately support this claim. The Illinois Supreme Court denied the PLA on September 28, 2016.

D. Federal habeas petition

The habeas petition raises several grounds: (1) ineffective assistance of trial counsel based on counsel's failure to challenge the admission of the Petitioner's statement; (2) the prosecution violated the Petitioner's due process rights and *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose that investigating detectives Jim Graham and Paul Carpenter were being investigated for misconduct in other cases; (3) the Petitioner's trial was unfair and due process rights were violated because of certain trial court rulings: a) excluding evidence that victim Tyrone Jones was a suspect in the shooting death of Chris Pudschun two weeks earlier (claim three); and b) admitting evidence that Petitioner was engaged in methamphetamine production (claim six); (4) the enhancement of Petitioner's sentence based on his discharge of a firearm violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000); and (5) appellate counsel was ineffective for failing to raise claims one, three and five.

On May 26, 2017, the Court received the Petitioner's motion to supplement his habeas petition with an additional claim that the prosecutor erred in closing argument. The Petitioner apparently mailed the document on May 19, 2017. In a docket entry of May 30, 2017, the Court granted the motion.

II. DISCUSSION

A. Petitioner's Supplemental Claim

The United States Supreme Court has held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

The limitations period expired on May 7, 2017, or twelve days before the Petitioner mailed the motion to supplement his habeas petition. Accordingly, it was untimely. The Petitioner claims that the supplemental claim relates back in that it is included among the due process violations, all of which cumulatively prejudiced him at trial. However, the Court finds that the supplemental claim regarding prejudicial evidence offered by the prosecution is its own "stand alone" claim and not one which is dependent on other claims. Accordingly, the claim is untimely and the Petitioner has provided no basis for equitable tolling.

B. Procedural Default

A petitioner seeking relief under § 2254 must properly exhaust his state court remedies. 28 U.S.C. § 2254(b). "Under "Section 2254's exhaustion requirement, the petitioner must assert his federal claim through one complete round of state-court review, either on direct appeal or in post-conviction proceedings." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). This includes filing a PLA in the Illinois Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999).

The petitioner must present the operative facts and the legal principles pertaining to each claim. *See Pole*, 570 F.3d at 934.

Procedural default due to failure to exhaust a claim in state court can result in two primary ways. A claim that is not "fairly presented" "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings" may be procedurally defaulted. *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). "Procedural default can also occur if the state court rejects a federal claim based on a state procedural rule that is both independent of the federal question and adequate to support the judgment." *Id*.

(1) Claims that should have been Raised on Direct Appeal

The failure in a post-conviction proceeding to raise a claim which could have been addressed on direct appeal constitutes procedural default, resulting in forfeiture of those claims. *See People v. Erickson*, 161 Ill.2d 82, 87 (1994).

It is apparent that three of the Petitioner's habeas claims are based on the trial record, including (1) his claim that trial counsel was ineffective for failing to argue that his statement was obtained in violation of his right to counsel; (2) his claim that the trial court erred in excluding evidence that Jones was a suspect in a shooting; and (3) his *Apprendi* claim. Because the state courts would hold these claims to be procedurally barred, the Court concludes that they are defaulted.

Additionally, the record shows that Petitioner failed to exhaust these issues in his post-conviction proceedings. Although the Petitioner also raised an *Apprendi* claim in his pro se post-conviction petition, he withdrew that argument in his amended petition and it was never presented to the state court for adjudication. The Petitioner claimed in his post-conviction petition that trial counsel was ineffective in not arguing that his statement was obtained in violation of his right to counsel. However, he did not pursue that issue in his post-conviction appeal. Additionally, the Petitioner claimed in his post-conviction petition that appellate counsel was ineffective for failing to challenge the exclusion of evidence that Jones was a suspect in a shooting. Because he failed to properly pursue a claim that appellate counsel was ineffective in his post-conviction appeal, the Petitioner has also defaulted that issue.

(2) Habeas Claims related to Arguments addressed on Direct Appeal

Two of the Petitioner's claims relate to issues he raised on direct appeal. In state court, the Petitioner challenged the admission of evidence concerning methamphetamine production based solely on state evidentiary law. He did not argue that the trial court violated federal constitutional law. The Petitioner also asserts here—as he did on direct appeal--that the prosecutor erred in closing arguments. Both of those claims are defaulted.

The Petitioner contends here that the admission of evidence concerning methamphetamine production violated his right to due process. He did not raise that issue in state court. Rather, the Petitioner challenged the admission of that evidence based only on state evidentiary law. The Petitioner was required to raise the issue in state court in order for it to be preserved for federal habeas review. *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). The Court concludes that, by failing to raise a federal constitutional claim in state court, the Petitioner has defaulted his claim of federal constitutional error in admitting the evidence of methamphetamine production.

As noted, the Petitioner did assert on direct appeal that the prosecutor erred in closing arguments. However, the Illinois Appellate Court held that it was procedurally barred. The claim is defaulted here because Illinois law requires the Petitioner to object to the arguments contemporaneously and to pursue the issue through a post-trial motion. *See People v. Enoch*, 122 Ill.2d 176, 186 (1988). Because the Petitioner did neither, the state appellate court found that the issue was forfeited on appeal. Accordingly, this Court concludes that the claim relating to the prosecutor's closing argument is also defaulted here.

(3) Habeas Claims in Post-Conviction Petition

In his post-conviction petition, the Petitioner raised claims that could not have been raised on direct appeal, including his *Brady* claim and his ineffective assistance of counsel claim. In his counseled brief, however, the Petitioner argued only that post-conviction counsel provided "unreasonable assistance" under state law by failing to offer further support for his *Brady* claim. The Petitioner sought to remedy only an alleged state law violation and requested a remand to develop the record on his *Brady* claim. By challenging only post-conviction counsel's performance, the Petitioner has forfeited review of the trial court's ruling on the merits of his claims. *See People v. Cotto*, 2016 IL 119006, 51 N.E.3d 802, 811 (2016).

For similar reasons, the Court finds that the *Brady* claim embedded in the post-conviction counsel argument was not "fairly presented" to the Illinois Appellate Court for purposes of federal habeas review. "[A]n assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). If a petitioner "fully set[s] out the factual legal bases" for the embedded claim and "provide[s] the state courts with the opportunity to address the underlying issue," then the issue is not procedurally defaulted. However, the Petitioner did not do that with his *Brady* claim.

The Petitioner did attempt to file a pro se supplemental brief in the Illinois Appellate Court which included all of his post-conviction claims. However, this did not avoid a default. Although the Petitioner stated he wanted to supplement and not supplant the brief then on file, Illinois courts prohibit that type of "hybrid representation" in which a defendant files a pro se brief to supplement counsel's filing. *See Clemons v. Pfister*, 845 F.3d 816, 819-20 (7th Cir. 2017). The Court concludes that, because the Illinois Appellate Court's rejection of a pro se supplemental brief is based on an adequate and independent state ground, *see id*. at 820, the claims in the Petitioner's rejected pro se filing are procedurally defaulted.

(4) Whether Petitioner can show Cause for Defaults

"An adequate and independent state law ground does not, however, absolutely preclude review of a procedurally defaulted claim during federal habeas review." *Promotor v. Pollard*, 628 F.3d 878, 885 (7th Cir. 2010). There is an equitable exception if the Petitioner establishes "cause and prejudice for the default" or establish that a fundamental miscarriage of justice will ensue if the defaulted claim is not considered. *Id*.

In certain instances, counsel's ineffectiveness may provide cause to excuse a default. "Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014). However, those claims must be preserved and properly exhausted. *See id*. Because he

defaulted his appellate-counsel claim on post-conviction appeal, the Petitioner cannot rely on appellate counsel's alleged deficiency to excuse the defaults that occurred on direct appeal.

The Petitioner's assertion that appellate counsel was ineffective would be without merit. Appellate counsel raised five issues on appeal. The Petitioner cannot establish that his defaulted claims are "clearly stronger," as he must do to establish deficient performance. *See Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015).

Additionally, because the Petitioner has no constitutional right to an attorney in a state post-conviction proceeding, he cannot claim the ineffective assistance of counsel in such proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991). Accordingly, the Petitioner has no viable claim that the alleged deficient performance of his post-conviction counsel excuses the default of his post-conviction claims.

C. <u>Merits of claims</u>

(1)

Assuming that the Petitioner's *Brady* claim was not procedurally defaulted, the Court finds that it is nevertheless without merit. Because the Illinois Appellate Court adjudicated the merits of the *Brady* claim when concluding that post-conviction counsel performed adequately, the Petitioner must show that its

13

adjudication was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or unreasonable in light of the facts. *See* 28 U.S.C. § 2254(d). Any factual determination by the state court relevant to the claim is presumed to be correct and must be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Under *Brady*, the prosecution has an "affirmative duty" to disclose evidence that is favorable to the defendant and material to guilt or punishment. *See United States v. Bland*, 517 F.3d 930, 933-34 (7th Cir. 2008). "Evidence is material if there exists a reasonable probability that its disclosure to the defense would have changed the result of the trial." *Id*. at 934 (internal quotation marks omitted).

The state court determined, factually, that there was no *Brady* material for the State to disclose. Although Detectives Graham and Carpenter eventually were found guilty of misconduct and disciplined for their behavior in other cases years after the Petitioner's conviction, there were only rumors and allegations as to the detectives' misconduct at the time of the Petitioner's trial. Vague allegations like that would not have been admissible to impeach their credibility at trial. Based on the evidence which existed at the time of the Petitioner's post-conviction appeal, the Court finds that the Illinois Appellate Court's determination was particularly reasonable. The Court further concludes that evidence concerning those potential investigations was not *Brady* material.

14

(2)

The Court also finds that, even assuming the argument regarding the admission of evidence of methamphetamine production was preserved, the claim is without merit. The Illinois Court held on direct appeal that there was no error, particularly prejudicial error, in admitting evidence concerning the Petitioner's involvement in methamphetamine production, including evidence that Petitioner was, at the time of his arrest, present at a house filled with items associated with methamphetamine manufacturing. That "evidence was relevant to [the Petitioner's] consciousness of guilt, the circumstances of his arrest, and his motive in shooting" Jones. There also was little risk of prejudice, given that Petitioner admitted that he shot Jones. The Petitioner's state of mind was a critical issue. That turned on whether jurors believed the Petitioner's claim that Jones acted aggressively in the moments before he shot Jones, or Molton's testimony to the contrary. Because the evidence concerning methamphetamine manufacturing was not particularly relevant to that issue, the Court concludes the claim—if preserved—fails because the Petitioner cannot show prejudicial error.

III.   CONCLUSION

For the foregoing reasons, the Court finds that Petitioner's claims are either time-barred or procedurally defaulted. Even if the claims were not procedurally barred, the Court concludes they are meritless.

Pursuant to Rule 11(a) of the Rules Governing Habeas Corpus Cases under Section 2254, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court finds that reasonable jurists would not find it debatable that Petitioner's claims are time-barred, procedurally defaulted and/or meritless. Therefore, the certificate of appealability is denied.

Ergo, the Petition of Joshua Meyers for Writ of Habeas Corpus under 28 U.S.C. § 2254 [d/e 1] is DENIED.

The Amended Petition for Writ of Habeas Corpus [d/e 16] is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Habeas Corpus Cases, the Court denies issuance of a certificate of appealability.

The Clerk will enter Judgment and terminate this case.

ENTER: September 20, 2018

    FOR THE COURT:

        /s/ *Richard Mills*
        Richard Mills
        United States District Judge